[Civ. No. 1366. Second Appellate District.—May 31, 1913.]

GEORGE S. HUPP, Petitioner, v. SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF LOS ANGELES et al., Respondents.

CONTEMPT OF COURT—REFUSAL OF ATTORNEY TO PRODUCE EVIDENCE.— Counsel for the defendant is not subject to punishment as for a contempt of court in refusing to produce a letter for inspection at the trial, if it is not shown that the letter has any material bearing on the issues of the case.

ID.—REFUSAL TO PRODUCE EVIDENCE—MATERIALITY OF EVIDENCE.—Before a party can be held in contempt for refusing to furnish or produce evidence at a trial it must appear that such evidence, if produced, would be material to some of the issues of the case.

ID.—PRODUCTION OF EVIDENCE BY PERSON NOT PARTY TO TRIAL.—One not a party to an action, receiving a letter from another who is a stranger to the suit, should not be required to produce it at the trial, except upon clear and unequivocal evidence showing that it is material to the issues involved.

ID.—COSTS ON CERTIORARI TO REVIEW JUDGMENT FOR CONTEMPT.—On *certiorari* to review a judgment for contempt in refusing to produce evidence at a trial, only the lower court and judge thereof being before the appellate court, they should not be subjected to costs.

PETITION for Certiorari to review a judgment for contempt.

Frank C. Hill, and George S. Hupp, for Petitioner.

William A. Bowen, and Flint, Gray & Barker, for Respondents.

JAMES, J.—*Certiorari* to review the action of the superior court in adjudging petitioner guilty of contempt.

Petitioner is an attorney at law and as such appeared as counsel for defendants in an action brought by one W. C. McEvilly against J. J. Haggarty, J. C. Haggarty, and Frank C. Hill in the superior court of Los Angeles County. The action was commenced on or about the twentieth day of February, 1912. The plaintiff in that action sought to secure an injunction to restrain defendants from interfering with his management of a mercantile institution in the city of Los Angeles, and to restrain them from refusing to accept merchandise purchased by him for the business conducted under his management, and to restrain them from carrying out an alleged threat to close the doors of such mercantile establishment and destroy the credit and business thereof. It was set out in the complaint that the plaintiff purchased from defendant J. J. Haggarty an interest in a certain cloak, suit, and millinery business, for which he agreed to pay a large sum of money; that this business was managed as a corporation, and that after making the purchase referred to McEvilly was appointed president and general manager of the corporation and entered upon the discharge of his duties as such, which included the purchasing of merchandise from time to time for the purpose of keeping up the stock of the establishment. It was further alleged in the complaint filed in the injunction suit that while J. J. Haggarty was conducting a business similar to that in which McEvilly was engaged he became jealous of the success attained by McEvilly, and thereupon entered into a conspiracy with a majority of the members of the board of directors of the corporation of which McEvilly was the president and general manager, which conspiracy had for its object the destruction of the business of that corporation; that the conspirators slandered the credit

of the corporation and refused to accept merchandise purchased by McEvilly as manager and refused and threatened to refuse to pay for any merchandise ordered by McEvilly, and threatened to close the doors of the business house of the corporation and destroy its credit. An answer being filed, the action came on for trial, and for the purpose of proving the facts alleged as to the conspiracy, plaintiff called one Silk as a witness.. Silk was the local representative of a San Francisco house which had theretofore supplied merchandise to the corporation hereinbefore referred to and which had extended to the corporation credit. This witness was asked as to statements made to him by J. J. Haggarty, and he testified that Mr. Haggarty had asked him if he was selling goods to McEvilly's house, and receiving a reply in the affirmative Haggarty said: "Well, go right on if you want to; go right ahead." The witness then stated that he had stopped selling goods to McEvilly, and that early in February, 1912, he told McEvilly that owing to the unsettled condition of his (McEvilly's) store he would not sell them goods for a while; that this conversation with McEvilly took place a few days after he had had the conversation with Haggarty. He was then asked this question: "And then you thereupon wrote to Lezinsky Brothers (they being his employers) about the Paris Cloak, Suit & Millinery house? A. Yes, I wrote Lezinsky Brothers." The witness testified that he had had no conversation respecting the business referred to with either of the other defendants in the injunction suit who constituted a majority of the board of directors of the McEvilly corporation. With the purpose of proving what communication Silk, the selling agent, made to his employers, witness Lezinsky, one of the latter, was called and in answer to questions propounded to him testified that he did receive letters from Silk, and that one letter in particular he received after the date of the commencement of the injunction suit. Counsel for plaintiff demanded the production of this letter and it was finally admitted to be in the hands of petitioner, who refused to produce it for inspection on the ground that it had not been shown to contain any matter material to the issues on trial, or that it would furnish competent or material evidence in the case. The court sustained the demand of counsel for the plaintiff and, upon the continued refusal of petitioner to produce the

letter, adjudged petitioner guilty of a contempt and directed that he be imprisoned until he obey the order of the court and deliver up this letter at the trial. The elementary proposition is not disputed that before a party can be held in contempt for refusing to furnish or produce evidence at a trial it must appear that such evidence, if produced, would be material to some of the issues of the case. In the action which was being tried, with petitioner as one of the counsel, the witness Silk had testified fully as to what had been said to him by J. J. Haggarty, the only one of the alleged conspirators with whom he had talked regarding the plaintiff's business, and he testified in effect that because of the statement made to him by J. J. Haggarty and other rumors and talk which he had heard, his firm had refused to sell goods to McEvilly. Plaintiff's purpose in requiring the production of the particular letter which the court directed petitioner to produce was undoubtedly to show that the statement of Haggarty had been communicated to the supply house represented by Silk, and that such statement had been effective in destroying the credit of McEvilly. It appeared in evidence that early in February, 1912, Silk told McEvilly that he could furnish them no more goods, but it further appeared that the particular letter, production of which was sought to be compelled, was not received by Silk's employers until a date subsequent and some time after the injunction suit had been commenced. Assuming, without deciding, that a letter written by a stranger to the suit could be used as evidence tending to establish the construction which such stranger gave to the language of Haggarty and that influenced by such construction, notice of which was imparted by the letter, the employers of the writer of the letter refused to sell merchandise to plaintiff, nevertheless, such state of facts is not shown by the record, as the communication from Silk to his employers did not reach the latter's hands until after this action was commenced; hence, could have had no influence in determining the action of the employers, which determination is shown to have been made before the receipt of the letter. It is difficult to see how, under this state of the case, the letter could have had any material bearing upon the issues which had been framed prior to the time that the letter reached the hands of Silk's employers. The witness Lezinsky testified that the letter had been for-

warded to him from New York and reached his hands in San Francisco a few days only before service was made upon him of subpoena to attend and give his deposition which was intended to be used at the trial of the action in question.

It not appearing, therefore, that the letter, for the refusal to produce which petitioner was adjudged to be in contempt of court, contained evidence pertinent and material to the issues on trial, the trial judge was without jurisdiction to make the judgment and order complained of, and the same is annulled.

Allen, P. J., concurred.

SHAW, J., concurring: I concur in the judgment, not only for the reasons stated in the opinion, but upon the further ground that one not a party to an action receiving a letter from another who is a stranger to the suit should not be required to produce it at the trial of such an action, save and except upon clear and unequivocal evidence, and such is not disclosed by the record, showing that it is material to the issues involved. (*Kullman etc. Co.* v. *Superior Court,* 15 Cal. App. 276, [114 Pac. 589].) Moreover, since the witness Silk testified that the only thing said to him by Haggarty was to ask if he was selling goods to McEvilly, and upon receiving an affirmative answer said: ''Well, go right on, if you want to; go right ahead,'' anything which he might have stated to Lezinsky in the letter other than this, could in no event bind Haggarty. Assuming that it was material to show whether or not Silk communicated to Lezinsky the remark so made by Haggarty, such fact could not have been ascertained by interrogating him as to what he did with reference to the matter.

A petition for a rehearing of this cause was denied by the district court of appeal on June 25, 1913, and the following opinion then rendered:

THE COURT.—No order as to costs was made upon the original hearing, nor is such order ordinarily made because of section 1022 of the Code of Civil Procedure, which is controlling, and under the provisions of which costs follow to the prevailing party as a matter of course and are included in the *remittitur.* In the case at bar, however, the defendants in interest are not parties, the court and judge thereof only being

before the court, neither of whom has any interest in the controversy (*Matter of De Lucca,* 146 Cal. 113, [79 Pac. 853]), and should not be subject to costs in a proceeding of this character, which is but a review of a judicial act. Such omission to award costs is not intended to affect any rights between the real parties in interest should a future controversy arise as to the right to recover on account thereof.

The judgment is modified by adding thereto the following: "Without costs as against the superior court or the judge thereof."

Rehearing denied.